UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:25-CV-00009-CRS-CHL

**DARRELL C.,**[1]                                                                        **Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY,**                                          **Defendant.**

### REPORT AND RECOMMENDATION

Before the Court is the Complaint filed by Plaintiff, Darrell C. ("Claimant"). Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) This case was referred to the undersigned Magistrate Judge to prepare a report and recommendation. (DN 7.) Claimant and the Commissioner each filed a Fact and Law Summary. (DNs 8, 10.) Claimant did not file a reply, and his time to do so has expired. (DN 7.) Therefore, this matter is ripe for review.

For the reasons set forth below, the undersigned recommends that the final decision of the Commissioner be **AFFIRMED**.

**I.    BACKGROUND**

On or about March 8, 2022, Claimant filed an application for disability insurance benefits under Title II ("DIB") and supplemental security income under Title XVI ("SSI"). (R. at 17, 60, 68, 76-78, 88-90, 194-217.) His application alleged disability beginning on October 2, 2020, due to heart palpitations, missed and irregular heartbeat, high blood pressure, obesity, and sleep apnea. (*Id*. at 60, 68, 78, 90, 241.) Claimant's applications were denied initially and again on reconsideration. (*Id.* at 105-14, 117-24.)

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.

At Claimant's request, Administrative Law Judge ("ALJ") Ronald Fleming ("the ALJ") conducted a hearing on Claimant's application on September 14, 2023. (*Id.* at 31-59, 125-26.) Claimant and his counsel appeared by telephone. (*Id*. at 33.) An impartial vocational expert also participated in the hearing. (*Id*. at 36.) During the hearing, Claimant testified to the following. He drives two to three times per week to go to bible study and to go to the grocery and pharmacy. (*Id.* at 39.) He does not need assistance with showering, dressing, or using the restroom. (*Id.* at 48.) He cooks, washes dishes, vacuums, sweeps, does laundry, and shops by ordering things online and picking them up. (*Id.* at 49.) He cuts his grass once per week on a riding lawnmower. (*Id.*) He takes care of his elderly mother. (*Id.*) He is no longer taking medications for depression and anxiety and does not see a provider for those impairments though he still has "a little bit of anxiety." (*Id.* at 43-44.) He has had two blood clots and is on blood thinners; he was told he'll be on blood thinners for the rest of his life. (*Id.* at 44.) He has sarcoidosis and problems with shortness of breath. (*Id.*) He has heart palpitations at varying intervals, sometimes a couple of times per week and sometimes a couple of times per month. (*Id.* at 47.) He takes medication once per day for his palpitations and has been on it for years. (*Id.*) He estimates that he can sit for an hour before he has to stand up, stand still for ten to fifteen minutes before he has to sit down, and walk for two hours before he has to sit down. (*Id.*) Bending is hard on his back and impeded by his stomach; he is also not very flexible anymore. (*Id.* at 48.) He could kneel down on one knee and squat if he had something to hold on to for balance. (*Id.*) His ankles and legs swell daily. (*Id.* at 50.) He takes a water pill to assist with swelling and also wears compression stockings most days. (*Id.* at 50-51.) He does not elevate his legs during the day. (*Id.* at 51.) He experiences pain associated with his prostate and has to go to the bathroom every fifteen to twenty minutes. (*Id.* at 51-52.) He experiences debilitating joint pain. (*Id.* at 56-57.)

2

The ALJ issued an unfavorable decision on December 26, 2023. (*Id*. at 14-30.) Applying the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled, the ALJ made the following findings. First, Claimant had not engaged in substantial gainful activity since October 2, 2020, the alleged onset date. (*Id*. at. 20.) Second, Claimant's deep vein thrombosis, pulmonary sarcoidosis, and obesity were severe impairments. (*Id*.) Third, Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id*. at 22.) Fourth, Claimant had the residual functional capacity ("RFC") to perform medium work with the following exceptions:

> the claimant can perform frequent climbing of ramps and stairs. He can occasionally climb ladders, ropes, and scaffolds. The claimant can frequently balance and stoop, and frequently kneel, crouch and crawl. He must avoid concentrated exposure to extreme heat, cold, fumes odors, dusts, gases, poor ventilation, dangerous machinery, and heights.

(*Id*.) Fifth, and finally, Claimant was capable of performing his past relevant work as an electrician and a maintenance engineer, which did not require performance of work-related activities precluded by Claimant's RFC. (*Id*. at 25.) The ALJ concluded Claimant had not been under a disability, as defined in the Social Security Act, from October 2, 2020, through the date of his decision. (*Id*. at 26.)

Claimant subsequently requested an appeal to the Appeals Council, which denied his request for review on November 4, 2024. (*Id.* at 1-6, 191-93.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2025); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Accordingly, Claimant timely filed this action on January 6, 2025. (DN 1.)

## II. CONCLUSIONS OF LAW

The Social Security Act authorizes payments of DIB and SSI to persons with disabilities. *See* 42 U.S.C. §§ 401-434, 1381-1383f. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2025).

### A. Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

B.     **Five-Step Sequential Evaluation Process for Evaluating Disability**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2025). In summary, the evaluation process proceeds as follows:

(1)   Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2)   Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3)   Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4)   Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5)   Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909 (2025).

5

always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C. Claimant's Contentions

Claimant challenged the ALJ's assessment of his RFC. First, Claimant argued that the ALJ erred in his assessment of the medical opinion evidence of record. (DN 8, at PageID # 820-22.) Second, Claimant argued that the ALJ inappropriately substituted his own medical judgment for that of the state agency medical consultants in finding that Claimant could perform medium work. (*Id.* at 822-24.) Finally, Claimant argued that the ALJ's RFC did not sufficiently contain a function-by-function assessment of his ability to perform sustained work activities. (*Id.* at 824-25.) The undersigned will address each of Claimant's arguments below.

#### 1. Opinion Evidence

Claimant argued that the ALJ erred in his assessment of the opinion evidence of record. (*Id.* at 820-22.) The applicable regulations set forth specific rules an ALJ must follow with regard to opinion evidence. Pursuant to 20 C.F.R. §§ 404.1520c, 416.920c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record regardless of its source.[3] 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2025). Instead, an ALJ will evaluate the "persuasiveness" of a medical opinion by reference to the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(a), (c); 20 C.F.R. § 416.920c(a), (c). The regulations provide that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(a), (b)(2); 20 C.F.R. § 416.920c(a), (b)(2).

---

[3] This language indicates that the new regulation has done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2025).

6

However, the regulations state that "it is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions . . . in [the] case record"; thus, an ALJ is not required to explicitly discuss how he or she weighed the factors of relationship with the claimant,[4] specialization, and other factors.[5]  20 C.F.R. §§ 404.1520c(b)(1)-(2), 416.920c(b)(1)-(2).  Where two medical opinions reach different conclusions but are "equally well-supported . . . and consistent with the record," an ALJ is required to state how he or she considered the other "most persuasive" factors in making his or her decision. 20 C.F.R. § 404.1520c(b)(3), 416.920c(b)(3).

The Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement to "articulate how [he or she] considered the medical opinions" and "explain how [he or she] considered the supportability and consistency factors" under the new regulations.  20 C.F.R. §§ 404.1520c(b), 416.920c(b).  *But see Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *2 (6th Cir. Sept. 28, 2023) (noting that the new regulations "substantially reduce[ ] the ALJ's obligation to explain the basis for his or her assessment of medical opinions"); *Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 822 (6th Cir. 2020) (White, J. dissenting) (applying the new regulations and finding that "[t]he ALJ did not clearly analyze the supportability and consistency of the state consultants' assessments, as compared to other evidence in the record which supported [the plaintiff]'s claims").  However, district courts applying the new regulations within this circuit consistently apply the articulation

---

[4] In assessing this factor, the regulations require an ALJ to consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.  20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3).

[5] The regulations provide that an ALJ will consider any "other factors that tend to support or contradict a medical opinion."  20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5).  These factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim," "whether new evidence [ ] receive[d] after the medical source made his or her medical opinion . . . makes the medical opinion . . . more or less persuasive," and whether the medical source has "an understanding of [the] disability program's policies and evidentiary requirements."  20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5).

7

requirement literally. *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation." (emphasis in original)); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287, at *1 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions").

Claimant argued that the ALJ did not comply with the applicable regulations because the ALJ did not address his treating provider's opinion that Claimant would need to use compression stockings and elevate his legs. (DN 8, at PageID # 822 (citing R. at 565, 570, 576).) In the records cited by Claimant of March 17, April 25, and July 20, 2023, visits to his cardiologist's office, his cardiologist C. Bart Dawson, MD, and treating nurse practitioner Kelly Hurst, APRN, documented as part of his treatment plan for his leg pain and venous insufficiency that Claimant should "continue with compression stockings and elevation." (R. at 565 ("Venous insufficiency-continue with compression stockings and elevation"); *id.* at 570 ("Venous insufficiency-continue with compression stockings and elevation"); *id.* at 576 ("Leg pain, I suspect this is secondary to venous insufficiency and some degree of phlebitis. It does not sound arterial given that it is better with physical exertion. Continue compression stockings and elevation as needed").) However, these

treatment notes do not constitute medical opinions under the applicable regulations. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) define a medical opinion as "a statement from a medical source about what you can still do despite your impairments(s) and whether you whether you have one or more impairment-related limitations or restrictions" in certain abilities. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) (2025). The relevant abilities for adults are defined as:

> (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, coworkers, or work pressures in a work setting;
>
> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. §§ 404.1513(a)(2)(i), 416.913(a)(2)(i). Claimant's providers' statements recommending he use compression stockings and elevate his legs as needed are not statements about his ability to perform these functional abilities and, thus, are not medical opinions but "other medical evidence" under the applicable regulations. *See* 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3) (emphasis added) ("Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, *treatment prescribed* with response, or prognosis."). 20 C.F.R. §§ 404.1520c, 416.920c do not require an ALJ to evaluate the persuasiveness of "other medical evidence" and to articulate how the same was considered in the ALJ's written decision. 20 C.F.R. §§ 404.1520c, 416.920c (describing how an ALJ will

9

consider "medical opinions and prior administrative medical findings"). Instead, the ALJ was required to consider the records cited by Claimant but was not required to explicitly discuss them in his opinion. *See Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel,* 212 F.3d 433, 436 (8th Cir. 2000)) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."); *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."). Claimant did not make any meaningful argument that the ALJ failed to consider this evidence, nor does the undersigned find one would have been persuasive. The ALJ's decision notes that Claimant was prescribed compression stockings, citing the very exhibit containing the notes Claimant references, evidencing his consideration of the same. (R. at 24 (citing *id.* at 560-602).)

Claimant also argued that the ALJ erred by not addressing the opinions of the state agency psychological consultants. (DN 8, at PageID # 822.) But the state agency psychological consultants did not opine as to Claimant's mental RFC. (R. at 64, 72, 83, 95.) Instead, they applied the psychiatric review technique ("PRT") defined by 20 C.F.R. §§ 404.1520a, 416.920a as part of their assessment at steps two and three of whether Claimant had any severe impairments and whether any of those impairments met or medically equaled a listing. (*Id.* at 61-62, 69-70, 79-80, 91-92.) But the PRT is distinct and different from the RFC determination:

> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found

10

>in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8p, 61 Fed. Reg. 34474, 34477 (July 2, 1996). Claimant provided no authority to support that the ALJ was required to discuss the state agency psychological consultants' findings at steps two and three as part of his analysis of Claimant's RFC, and no authority to support that those step two and three findings qualified as medical opinions for purposes of 20 C.F.R. §§ 404.1520c, 416.920c. Further, in their PRT application, the state agency psychological consultants assessed Claimant to have mild limitations in his ability to understand, remember, and apply information and to concentrate, persist, and maintain pace; they found no limits on his ability to interact with others and adapt or manage himself. (R. at 62, 70, 80, 92.) But at step two, the ALJ found mild limitations in all four areas and stated that his RFC finding reflected the degree of limitation he had found. (*Id.* at 21-22.) Claimant did not point to any medical records or opinion from any medical provider supporting a need for mental limitations in Claimant's RFC. Accordingly, the undersigned finds no error as alleged by Claimant.

Claimant also argued that the ALJ erred in his discussion of the opinions of the state agency medical consultants because his discussion did not reference the supportability factor as required by the regulations. (DN 8, at PageID # 822.) The ALJ noted in his opinion that the state agency medical consultants had found that Claimant could perform work at the light exertional level with some additional restrictions but found that those opinions were "not persuasive because they are not consistent with or supported by the objective evidence." (R. at 25.) The ALJ then explained,

>Specifically, the evidence supports less restrictive functional limitations than those provided by DDS. As noted above, despite the claimant's pulmonary and cardiovascular conditions, coupled with his obesity, his intermittent palpitations were shown to have improved with an increase in his beta-blocker doses. Similarly, there was shown to be improvement of his lower extremity pain and edema with physical activity. His pulmonary effort was generally reported to be normal with normal breath sounds and he exhibited generally normal gait and station.

11

(*Id.* (internal citations omitted).) The undersigned finds this discussion sufficient to comply with the regulatory requirements. The supportability factor relates to the "objective medical evidence and supporting explanations presented by a medical source [] to support his or her medical opinion(s)." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor concerns the relation of a medical source's opinion to "the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). As one district court has explained, the opinions of state agency medical and psychological consultants are uniquely situated in terms of the ALJ's ability to conduct a supportability and consistency analysis:

> [T]he Court notes the inherent lack of clear delineation between supportability and consistency when an ALJ evaluates the opinion of a reviewer—like a state agency physician—who forms her opinion after a holistic review of the medical evidence of record. Consider, for example, a case in which there has been little or no change to the medical evidence of record between the time the reviewer issues her finding and the ALJ conducts a hearing. In that instance, the evidence upon which the reviewer supported her finding—the complete medical record at the time of her finding—would be virtually identical to the evidence with which the opinion is consistent or inconsistent—the complete medical record at the time of the ALJ's hearing. The ALJ is left in a position in which she is unable to consider supportability without simultaneously addressing consistency, and vice versa. A plaintiff might semantically allege error in such a case—saying that the ALJ only addressed consistency because she compared the reviewer's opinion to the entirety of the record. But the ALJ would have still fulfilled the purpose of the regulation: to give a fulsome review to medical opinions and prior administrative findings, paying particular attention both to how the opinions are internally supported and explained, and how they compare to the record as a whole.
>
> Contrast this with a medical opinion rendered by a treating physician. There, supportability and consistency are more clearly distinguished. The physician supports her opinion with her own treatment notes, objective medical findings, and experience with the plaintiff. Her opinion is consistent (or not) with the entire universe of the medical evidence of record.

*Tyrone H. v. Comm'r of Soc. Sec.*, No. 2:22-CV-3652, 2023 WL 2623571, at *6 (S.D. Ohio Mar. 24, 2023). *See also Griffin v. Kijakazi*, No. 2:22-CV-57-DCP, 2023 WL 3573734, at *9-11 (E.D. Tenn. May 19, 2023); *Elaine S. v. Comm'r of Soc. Sec.*, No. 3:22-cv-240, 2023 WL 262575, at *4

12

(S.D. Ohio Mar. 24, 2023). Here, the ALJ properly considered the supportability of the state agency medical consultants' opinions with respect to the other medical evidence of record, citing specific evidence in support of his evaluation. Though Claimant argued that the ALJ erred by not noting that the state agency medical consultants relied on Claimant's morbid obesity in forming their opinions, the ALJ elsewhere in his decision expressly considered Claimant's obesity, which informs his discussion of the state agency medical consultants' opinions. The ALJ wrote,

> The claimant is also obese. Specifically, he appeared on multiple instances with a body mass index ("BMI") higher than 45, which is evidence of his severe obesity. Furthermore, the claimant's excessive weight has exacerbated other conditions such the claimant's hypertension. Yet, although he is obese, the evidence fails to establish significant limitations associated with his weight, and no evidence of aggressive treatment such as gastric bypass or bariatric surgery suggested by a medical provider. The claimant worked on his weight loss journey and has lost approximately 30 pounds. He was advised to continue his weight loss. Additionally, the claimant's hypertension was shown to be better controlled with his weight loss and medication changes.

(R. at 24 (internal citations omitted).) This combined with the ALJ's specific reference to obesity in his analysis of the state agency medical consultants' opinions is sufficient to comport with the regulatory articulation requirement and supported by substantial evidence. Claimant made no detailed argument supported by citations to the record sufficient to undermine the ALJ's conclusion regarding Claimant's obesity. Accordingly, on these facts, the undersigned finds no error in the ALJ's analysis of the state agency medical consultants' opinions.

### 2. Playing Doctor

Claimant argued that the ALJ inappropriately substituted his medical judgment for that of the state agency medical consultants by limiting Claimant to medium work instead of light work and that the ALJ "impermissibly assessed [Claimant]'s RFC based upon bare medical findings and without the support of any medical opinions." (DN 8, at PageID # , 823, 822-24.) Claimant accused the ALJ of "playing doctor." The undersigned finds this contention without merit.

13

To the extent that Claimant intended to argue that the ALJ's RFC must be based on a medical opinion, that position is contradicted by caselaw. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727 (6th Cir. 2013) ("The ALJ was not required to obtain a medical expert to interpret the medical evidence related to [claimant's] physical impairments."); *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015) (recognizing that there is no authority to support the proposition "that an ALJ must, as a matter of law, seek out a physician's medical opinion where one is not offered"). Instead, the determination of a claimant's RFC is left to the ALJ. 20 C.F.R. §§ 404.1546(c), 416.946(c) (2025); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). As such, an ALJ does not improperly assume the role of a medical expert, or "play doctor," by weighing the medical and non-medical evidence before rendering an RFC finding. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009)).

Here, the ALJ recounted Claimant's testimony and the relevant medical evidence before summarizing:

> the claimant has not experienced persistent issues related to his physical [health], which severely affect his capacity to perform work activities for a continuous period. When reviewed in tandem, the contemporaneous medical evidence shows rudimentary and effective treatment and, while he exhibits some ongoing functional limitations, the claimant is able to perform certain tasks with appropriate treatment and medical management.

(R. at 24.) In particular, the ALJ noted that despite complaints of leg pain and edema, Claimant managed his condition with medications and he "showed improvement of his lower extremity pain and edema with physical activity." (*Id.*) The ALJ noted that Claimant's palpitations too improved with medications and also highlighted that despite his diagnosis of sarcoidosis, Claimant could ambulate without difficulty, had normal gait and station, and only infrequently reported shortness of breath (*Id.*) Claimant's conclusory argument that the ALJ's RFC finding was not supported by

14

substantial evidence does not demonstrate instances where the ALJ ignored contrary bodies of evidence or where the ALJ relied on raw medical data that had not already been interpreted by a physician. Instead, the ALJ's conclusion was based upon the objective medical evidence of record. Claimant's argument contains no citations to contrary medical records to dispute the ALJ"s conclusion and to support the Claimant's contention that the ALJ should have limited him to light work.

For these reasons, the undersigned finds Claimant's argument that the ALJ played doctor to be without merit and finds the ALJ's RFC analysis to be supported by substantial evidence.

### 3. Function-by-Function Assessment

Finally, Claimant argued that the ALJ "failed to adequately define [his] RFC for purposes of conducting an appropriate Step 4 evaluation" and did not make a sufficient function-by-function assessment of his RFC. (DN 8, at PageID # 825, 824-25.) The undersigned finds this contention to be without merit.

SSR 96-8p states that an ALJ's assessment of a claimant's RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 61 Fed. Reg. at 34478. It requires an ALJ's RFC finding to address in a function-by-function evaluation both the exertional and nonexertional capabilities of an individual. *Id.* at 34476-77. Exertional limitations relate to an individual's ability to sit, stand, walk, lift, carry, push, and pull. *Id.* at 34477. Nonexertional limitations relate to an individual's potential postural, manipulative, visual, communicative, and mental limitations and ability to tolerate various environmental factors. *Id.* However, "case law does not require the ALJ to discuss those capacities for which no

15

limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (per curiam); *Rudd*, 531 F. App'x at 729.

Here, the ALJ's RFC analysis comported with the requirements of SSR 96-8p. He stated that Claimant was capable of performing medium work with certain exceptions when it came to climbing, balancing, stooping, kneeling, crouching, crawling, and being exposed to certain hazards. (R. at 22.) His use of the term "medium work" automatically incorporated the functional limitations associated with that term as defined by both regulation and agency policy. Indeed, his decision stated that Claimant had the RFC "to perform medium work *as defined in 20 CFR 404.1567(c) and 416.967(c)*." (*Id.* (emphasis added).) 20 C.F.R. §§ 404.1567(c), 416.967(c) defines medium work as follows: "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c) (2025). SSR 83-10 further clarifies this definition:

> A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.
>
> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.) However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semiskilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).  Thus, by saying that Claimant was capable of medium work without any other stated limitations, the ALJ's RFC encompasses that Claimant was capable of lifting no more than fifty pounds at a time, frequently lifting/carrying objects weighing up to twenty-five pounds, standing/walking six hours in an eight-hour workday, and the other items described above unless the ALJ specifically listed an exception.  Claimant cited no case law to support that this was insufficient for purposes of SSR 96-8p, and the undersigned is aware of none.  Claimant also didn't cite any medical evidence to support his contention he could not perform within these functional limits or to support that more discussion by the ALJ was necessary.

Claimant briefly argued that Claimant's testimony about his past relevant work exceeded the demands of medium work and the ALJ's RFC.  (DN 8, at PageID # 826.)  But the ALJ's conclusion was that Claimant could do his past relevant work as "generally performed," not necessarily as he previously performed it.  (R. at 25.)  Claimant does not address—or even challenge—that distinction.

Under these circumstances, the undersigned finds no error in the ALJ's expression of Claimant's RFC by reference to "medium work as defined in 20 CFR 404.1567(c) and 416.967(c)."

## III. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of record

January 12, 2026

## Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Civ. P. 72(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).